THE PEOPLE ex rel. F. W. Matthiessen et al. Appellants,
vs. C. B. LIHME, Appellee.

*Opinion filed October 27, 1915.*

1. CORPORATIONS—*when corporation must look to its stock register to ascertain who are its stockholders.* A corporation must look to its stock register to ascertain who are its stockholders, where the act under which the company is incorporated provides that the capital stock shall be transferred on the books of the company in such manner as its by-laws may prescribe.

2. SAME—*when assignee of stock becomes stockholder.* Where the transfer of stock is required to be made on the books of the company, one may be made a stockholder by having the stock assigned to him, the transfer made on the books and a certificate issued to him for it.

3. SAME—*assignor is legal owner of stock until transfer is made on the books.* An equitable title may be conferred upon the assignee of stock by a delivery of the certificate, with the blank assignment and power of attorney thereon, signed by the assignor, but the assignor will remain the legal owner of the stock until the transfer is made on the books of the company.

4. SAME—*eligibility to be director follows legal ownership of stock.* Trustees holding the legal title to shares in a corporation are stockholders, and the eligibility to be a director follows the legal ownership, irrespective of the trusts under which the shares may be held.

5. SAME—*one to whom stock is transferred for express purpose of qualifying as director is eligible.* A stockholder to whom stock has been transferred on the books of the company is a stockholder and eligible to be a director, even though the transfer to him was for the express purpose of making him eligible to be a director, and although he signs a blank assignment of the certificate and also a paper stating that he does not claim private ownership of the stock but that it is part of a trust estate.

APPEAL from the Appellate Court for the Second District;—heard in that court on appeal from the Circuit Court of LaSalle county; the Hon. JOE A. DAVIS, Judge, presiding.

GEORGE WILEY, State's Attorney, WILLIAM J. CALHOUN, and M. F. GALLAGHER, for appellants.

MONTGOMERY, HART, SMITH & STEERE, (CHARLES S. CUTTING, LOUIS E. HART, and NORMAN H. PRITCHARD, of counsel,) for appellee.

Mr. JUSTICE DUNN delivered the opinion of the court:

This was an information in the nature of a *quo warranto,* in the circuit court of LaSalle county, requiring C. B. Lihme to answer by what warrant he claimed to hold and execute the office of director in the Matthiessen & Hegeler Zinc Company, a corporation. A plea was filed and a trial had by the court without a jury, resulting in a judgment in favor of the defendant, which the Appellate Court for the Second District affirmed. A certificate of importance was granted and an appeal allowed to this court.

The appellants deny the eligibility of the appellee to be a director. The Matthiessen & Hegeler Zinc Company was organized in January, 1871, under "An act to authorize the formation of corporations for manufacturing, mining, mechanical or chemical purposes," in force February 18, 1857, with a capital stock of $426,000, divided into 426 shares, for a term of fifty years, for the purpose of mining, smelting, rolling and manufacturing zinc. Section 4 of the act provides that "the affairs of such company shall be managed by a board of not less than three nor more than seven directors, who shall be stockholders therein, and who shall, after the first year, be annually elected by the stockholders, to serve for one year and until their successors shall have been elected." Since its organization the stock has been equally divided between E. C. Hegeler and members of his family on the one part and F. W. Matthiessen and members of his family on the other part. E. C. Hegeler died in June, 1910, and by his will left all of his stock in the zinc company, consisting of 212 shares, to Mary Hegeler Carus, his daughter, as trustee for the benefit of his seven children. The provisions of the will creating the trust, so far as necessary to be set out, are as follows:

"Said trustee shall cause to be transferred to her all of said shares and have new certificates of stock issued to her as trustee, and the said shares shall stand in her name, as trustee, upon the books of said company: *Provided, however,* that said trustee shall have the power and authority to transfer one or two shares, as may be necessary, to herself as an individual, or to one or two other persons, to enable such other person or persons to act as directors or director in said company. Said trustee shall continue to so hold and control said shares so bequeathed to her in trust until the expiration of the present charter of said company, and shall then convert said shares into cash and distribute such cash, in equal parts, among my children, and if any of my children be then dead leaving children of the body begotten then surviving, then such children of any such deceased child of mine shall take their parents' share. Until the expiration of the charter of said company said trustee shall collect and receive all the dividends upon all said shares so standing in her name as trustee, and out of said dividends shall pay (1) to herself, as compensation as such trustee, ten per cent of the amount of such dividends; (2) such additional sum as she may find necessary, to some suitable person selected by her to act as a director, as aforesaid; (3) such additional sum as she may find necessary to procure and pay for legal advice; and the remainder of such dividends shall be distributed, as soon as received by her, among my children in equal parts, and if any of my children die leaving children of the body begotten, then such children of any such deceased child of mine shall receive their parents' share of such dividends. I hereby declare that my intention and aim in placing all of the said shares of stock in the hands of a trustee, as above, is that all of said shares shall be voted and controlled as a unit, for the protection of the interest in said company represented by said shares."

269 — 23

Mrs. Carus owned one share of stock individually at the time of her father's death. In the settlement of some controversy between the heirs it was agreed on October 12, 1910, that Mrs. Carus should transfer this share to herself as trustee. Instead of doing so she assigned it to C. B. Lihme, to whom a new certificate was issued on December 17, 1910. The certificate stated on its face that it is transferable only on the books of the company upon the surrender of the certificate in person or by proxy. On December 21, 1910, Lihme signed the following instrument:

"I, C. B. Lihme, do hereby acknowledge and certify that the share of stock transferred to me in person for the purpose of qualifying me as a director in the Matthiessen & Hegeler Zinc Company is not held by me under any claim of ownership and is not to be construed as any part of my private estate, but I acknowledge that I hold the same merely for the purpose of qualifying me as a director in said zinc company, and that said share of stock is a part of and belongs to the 213 shares of stock held in trust under the agreement dated October 12, 1910, and signed by the seven children of the late Edward C. Hegeler, said agreement providing, among other things, for the holding and disposition of said zinc company stock.

Dec. 21, 1910.                                    C. B. Lihme.
Witnessed: C. Diesterweg."

At the same time Lihme signed a blank form of assignment indorsed on the back of the certificate of stock, as follows:

"For value received I hereby sell and assign to.............. all my interest in the within certificate, and appoint............ my proxy on the books of said company.........................

"Witness my hand and seal this 20th day of December, A. D. 1910.                                    C. B. Lihme. (Seal)
Attest: C. Diesterweg."

The certificate so indorsed by Lihme in blank and the above instrument signed by him were then deposited in the Illinois Trust and Savings Bank of Chicago, in a safety deposit box rented by all the heirs of E. C. Hegeler and standing in the joint names of Mary Hegeler Carus and Julius W. Hegeler, to which access could be had only by

the joint action of Mrs. Carus and Hegeler. In this box were kept the stock certificates representing the stock held by Mrs. Carus as trustee and other documents belonging to all of the heirs of E. C. Hegeler, and nothing else, it having been rented for that purpose. The stock stands in the name of C. B. Lihme, and the dividends have always been accounted for by him to the heirs in the same manner as the dividends on the stock held by Mrs. Carus as trustee. There have been several dividends, and Lihme always indorsed the identical check which he received, to Herman Hegeler, the treasurer of all the heirs, and mailed it to him as soon as received.

E. C. Hegeler was president of the company from its organization until December, 1903. Mary Hegeler Carus was president from December, 1903, to December 18, 1913. A member of the Matthiessen family has been secretary ever since the organization of the corporation. From December 18, 1903, until December 18, 1913, George P. Blow was secretary. Throughout the existence of the corporation, until December 18, 1913, the board of directors was elected equally from the two interests.

On February 27, 1913, a contract was entered into between Mary Hegeler Carus, trustee under her father's will, party of the first part, and C. B. Lihme, party of the second part, whereby, after reciting that under the terms and provisions of the will aforesaid the party of the first part holds in trust, until the expiration of the present charter of the Matthiessen & Hegeler Zinc Company, all of the shares of the capital stock of said company owned by said Edward C. Hegeler at the time of his death and is authorized to select a suitable person to act as director in that company and to pay to such person such sum as she shall find necessary as compensation for his services as director, and the said party of the first part deems the said party of the second part to be a suitable person to act as said director and has selected said party of the second part to

act as director in the said company during the continuance of this trust, the party of the first part, as trustee as aforesaid, agrees to, and does, employ the party of the second part to act as director of the said company for the term of seven years from December 18, 1912, and to pay him, as full compensation for services to be rendered as such director, fifteen per cent of the net profits accruing each year to the stock in said company of which the party of the first part is trustee, and the party of the second part accepts the office of director for seven years, and agrees to give to the performance of his duties such time, attention and energy as shall be necessary for the best interests, advantage and success of the said company, and to faithfully, diligently and according to his best abilities, in all respects, use his utmost endeavors to promote the interests and profitable management of said company. At the annual meeting of the stockholders on December 19, 1910, immediately after receiving the certificate of stock issued to him, the appellee was elected a director, by the unanimous vote of all the stockholders, for the term of one year, and by the like vote was again elected at the meeting on December 18, 1911, and again on December 18, 1912. On December 17, 1913, the day before the annual stockholders' meeting in that year, the petition was filed in this case to oust him from office, on the ground that he was not a stockholder of the company and not eligible to be a director.

That the appellee was legally elected a director if he had the legal qualifications for the office is conceded. The appellants' only contention is that he was not a stockholder within the meaning of the statute requiring directors to be stockholders. Section 8 of the act under which the zinc company is incorporated provides that the capital stock shall be transferable on the books of the company in such manner as its by-laws may prescribe, and it is to the stock register, therefore, that the corporation must look to ascertain who are its stockholders. When Mrs. Carus assigned

to the appellee the one share of stock which she owned and it was transferred to him on the books of the company and a certificate was issued to him for it he became a stockholder of the company. He was vested with the entire legal and equitable title, subject to the terms of any agreement by which he was bound. He still has such title except to the extent that he has voluntarily parted with it. The title could pass from him only by the surrender of his certificate and a transfer on the books of the company. He could confer an equitable title upon an assignee by a delivery of the certificate, with the blank assignment and power of attorney thereon, signed by the appellee, but the legal title would still remain in the appellee until a transfer was made on the books of the company. (*Otis* v. *Gardner,* 105 Ill. 436.) He still holds the legal title to this share of stock.

The appellants contend that appellee is only a sham or pretended stockholder, having no pecuniary interest whatever, arising from the ownership of stock, in the success of the corporation, and is therefore not qualified as a director. Counsel insist that a director must not only be a stockholder of record, but that he must also have a personal, pecuniary interest in the corporation, so that its affairs shall be managed by those having a financial interest in it. At the same time they concede, though insisting it has nothing to do with the case, that a trustee holding stock but having no interest therein other than as trustee may be a director. This is in accordance with the statute under which the Matthiessen & Hegeler Zinc Company is incorporated, for section 14 of that statute declares that every executor, administrator, guardian or curator shall represent the shares of stock in his hands at all meetings of the company and may vote accordingly as a stockholder. It is also in accord with the general doctrine that an executor may be a director, that trustees holding the legal title to shares are stockholders, and that eligibility to be a director

follows the legal ownership, irrespective of the trusts under which the shares may be held. Cook on Corporations, sec. 623; Thompson on Corporations, sec. 919; *Casper* v. *Kalt-Zimmers Manf. Co.* 159 Wis. 517; *Schmidt* v. *Mitchell,* 101 Ky. 570; *Grundy* v. *Briggs,* 1 Ch. Div. (1910) 444.

The foregoing authorities further hold that a stockholder to whom stock has been transferred for the express purpose of qualifying him to be a director is qualified. In Clark & Marshall on Corporations (sec. 661) it is said: "It has been held that beneficial ownership is not necessary, and that a person who holds the legal title to stock on the books of the company is qualified." Where it was required that a director should be the holder, in his own right, of one hundred shares, it was held that one having the requisite number of shares in his name, though he had been adjudicated a bankrupt and a trustee elected, was qualified, the shares not having been transferred upon the books of the company, the court saying that it was no longer open to question that one may hold as a registered owner in his own right though he has no beneficial ownership, and that holding as trustee without beneficial ownership will do. (*Sutton* v. *English and Colonial Produce Co.* 2 Ch. Div. (1902) 502; *Pulbrook* v. *Richmond Consolidated Mining Co.* 9 Ch. Div. 610.) In *State* v. *Ferris,* 42 Conn. 560, a bankrupt was held entitled to vote stock standing in his name on the books of the company though the title had passed to his assignee under the provisions of the Bankruptcy act. The person in whose name stock is entered on the books of the company, whether as a trustee or individually, is, as between himself and the company, the owner to all intents and purposes and particularly for the purposes of an election. (*People* v. *Robinson,* 64 Cal. 373.) In *In re Argus Printing Co.* 1 N. Dak. 434, it was held that one who had pledged his stock, which had been transferred on the corporate records by the pledgee, had no right to vote the stock, but that the pledgee in whose name the stock

stood had such right, and that a person to whom stock has been transferred for the sole purpose of qualifying him as a director is so qualified. One who holds stock for the express purpose of qualifying him as an official is qualified. *In re Leslie,* 58 N. J. Eq. 609; *State* v. *Leete,* 16 Nev. 242.

In answer to the argument that officers of a corporation should be personally interested in its welfare, and that that can be the case only when the legal and beneficial interests unite in the same person, the Supreme Court of Wisconsin said in *Casper* v. *Kalt-Zimmers Manf. Co. supra:* "We do not so consider it. Trust duties are some of the most sacred duties there are, and the confidence reposed through them is seldom abused. Even where stock is transferred for the express purpose of qualifying one to hold a corporate office, the person so transferring it is personally interested in the sound management of the corporation and would be unlikely to jeopardize his interest by placing the stock in incompetent hands. The rule that merely a legal title qualifies is more in consonance with present business requirements and is fraught with no undue hazard to stockholders."

A director of a corporation is only an agent and need not be a stockholder but for the statute. It may be desirable to have for a director a person who is not a stockholder. "A stockholder may have purchased stock with the view of becoming a director, or have obtained it by gift, or may hold it upon a trust, and be qualified to be a director. If the stock was legally issued and is not the property of the corporation and the legal title is in him he is *prima facie* capable of being a director, and his right to be a director by virtue of his legal title to such stock can be impeached only by showing that title was put in him colorably, with a view to qualify him to be a director for some dishonest purpose, in furtherance of some fraudulent scheme touching the organization or control of the company or to

carry into effect some fraudulent arrangement with the company." *In re St. Lawrence Steamboat Co.* 44 N. J. L. 529.

The appellants contend that the transfer of the stock to Lihme by Mrs. Carus was a mere formal act; that all interest, title, possession and control were withheld from him, and that immediately after receiving the certificate he handed it to Mrs. Carus and it was deposited in the private box of Mrs. Carus and Julius Hegeler, to which the appellee had no access, and they therefore insist that the return of the certificate to Mrs. Carus re-invested her with the legal title if she had ever parted with it. The legal title, as has been said, could not be re-conveyed to Mrs. Carus without a transfer on the books of the company, but the certificate, when returned to Mrs. Carus, was accompanied by a written statement of Lihme which showed his exact relation to this share of stock. Counsel rely upon their construction of this statement to some extent as justifying their position, but they misconstrue it. It states, in substance, that he holds one share of stock, which has been transferred to him individually for the purpose of qualifying him as a director,—not as his individual property, but as a part of the trust property of the Edward C. Hegeler estate and subject to the provisions of that trust. Counsel insist that he declares emphatically that he has no personal interest in the share. He does, but that is immaterial. They say he holds no share and has no right to take possession of the certificate. This is an erroneous deduction. On the record he appears as owner, and while he has not the manual possession of the certificate it is deposited with the other trust certificates, and there is no reason to suppose that he could not take possession of it if any occasion should arise, in connection with the trust, for his doing so. No one interested has ever refused, so far as appears, to recognize his right as trustee and his ownership of and authority over the certificate as such trustee. On the contrary, he has been recognized as the owner and the divi-

dends on the stock have been paid to him. Counsel say the appellee declares that the stock was registered in his name merely to qualify him as a director, (which is immaterial,) and that it was a part of and belonged to a trust held by another. He declares that it is a part of and belongs to a trust but not that the trust is held by another. What he does say is that the trust it belongs to is under the agreement of the seven children of Edward C. Hegeler, which provides, among other things, for the holding and disposition of the said zinc company stock. That agreement does not appear in the record, but it could not have been inconsistent with the will of Edward C. Hegeler, which provides that the stock must be held by Mrs. Carus except one or two shares, which she may transfer to one or two other persons. The appellee's share is one of those shares which Mrs. Carus was authorized to transfer, and he is the person to whom she transferred it under the power given by the will. By his acceptance he consented to hold it upon the same trusts as Mrs. Carus holds the shares held by her, and he is subject to the same obligation, so far as this share of stock is concerned, as she is in regard to the larger number of shares which she holds. Naturally, as stated by counsel, the appellee never claimed any benefit arising from the share, but immediately indorsed the checks for dividends to those who were entitled to receive them under the trust.

In order to secure an equal representation in the corporation with the Matthiessen interest, Edward C. Hegeler's will authorized his trustee to join one or two other persons, as she might find necessary, with her in the trust and to provide for their compensation. In pursuance of this authority she joined the appellee with her and by the contract in the record provided for his compensation. He holds one share of stock in the corporation as a trustee and is therefore eligible to be a director.

The judgment is affirmed.    *Judgment affirmed.*